IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ELLEN EADS,

          Plaintiff,

v.                                    CIVIL ACTION NO. 5:16-cv-12642

KOHL'S DEPARTMENT
STORES, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Motion to Remand* (Document 20) and *Memorandum of Law in Support* (Document 21), the *Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand* (Document 45), and the *Plaintiff's Reply in Further Support of her Motion to Remand* (Document 51), as well as all attached exhibits. The Court has also reviewed the Plaintiff's *Individual and Class Action Complaint* (Document 1-1) and the *Notice of Removal* (Document 1). For the reasons stated herein, the Court finds that the motion to remand should be granted.

**FACTS**

Plaintiff Ellen Eads is a resident of Raleigh County, West Virginia. She filed her Individual and Class Action Complaint (Document 1-1) in the Circuit Court of Raleigh County, West Virginia, on November 18, 2016, and the Defendants removed the action to this Court on

December 28, 2016. Ms. Eads named the following Defendants: Kohl's Department Stores, Inc. (Kohl's), a Delaware corporation with a principal place of business in Wisconsin; Capital One, N.A. (Capital One), a national association bank with its principal place of business in Virginia; and Northland Group, Inc. (Northland), a Minnesota corporation with its principal place of business in Minnesota. Ms. Eads obtained a credit card account from Kohl's and/or Capital One, on which she made her last payment in April 2011, and her account was allegedly "charged off" as of June 2011. The Defendants allege a balance remains on the account of $1,300.30.

Kohl's and/or Capital One retained Northland to collect Ms. Eads' alleged debt, and Northland sent her collection letters dated October 31, 2015, and December 4, 2015. Ms. Eads contends the debt was beyond the three-year statute of limitations under Virginia law at the time the collection letters were sent. The collection letters did not contain language stating that the debt was time-barred, as required under West Virginia law.

Ms. Eads alleges both individual and class claims. The tentative class definition in the complaint is "All West Virginia consumers from whom defendants, or any one of them, attempted to collect a time-barred debt without the notice and disclaimers required by West Virginia Code 46A-2-128(f)." (Compl. at ¶ 14.) The complaint alleges violation(s) of the West Virginia Consumer Credit Protection Act (WVCCPA). The Plaintiff seeks the following relief:

> A. That the Court enjoin Defendants from attempting to collect time-barred debt in the State of West Virginia;
> B. That a statutory penalty, adjusted for inflation, pursuant to *West Virginia Code* § 46A-2-101(1) and 106, be awarded to Ms. Eads and each member of the class she represents for each violation of the WVCCPA;
> C. That Defendants be ordered to account for all time-barred debt collected from the class and reimburse each such member of the class all monies collected with interest thereon for the four year period preceding the filing of this action;

      D.      That Defendants be ordered to pay Ms. Eads' reasonable attorney fees and costs pursuant to the provisions of *West Virginia Code* § 46A-5-104 and 15 U.S.C. § 1692k;
      E.      Cancellation of all debt pursuant to *West Virginia Code* § 46A-5-105; and
      F.      For such other and further relief as the Court may deem appropriate.

(*Id.* at 7-8.)

Northland submitted a declaration by Greg Stevens, Chief Compliance Officer. (Document 45-1.) Mr. Stevens states that approximately 34,678 accounts in West Virginia were sent collection letters by Northland between June 6, 2014 and November 28, 2016. Of those, Mr. Stevens states that 11,163 were in default for more than three years. Mr. Stevens declares that, after further research, Northland specifically identified 1,743 West Virginia accounts that were sent an initial collection letter on debt that was past the three-year statute of limitations for collection that did not contain the required notice that the debt was beyond the statute of limitations. Mr. Stevens avers that the aggregate balance of those 1,743 accounts is $5,712,513.65.

The Plaintiff filed her motion to remand on January 27, 2017. After entry of the Court's *Order* (Document 31) granting the Defendants' stipulated motion for an extension of time to respond, the Defendants filed their response on March 3, 2017. The Plaintiff filed her reply on March 10, 2017, and the motion is ripe for review.

**STANDARD OF REVIEW**

The Class Action Fairness Act (CAFA) provides for federal jurisdiction in civil class action cases with an amount in controversy over $5,000,000, at least 100 class members, and diversity between at least one plaintiff and at least one defendant. 28 U.S.C. § 1332(d). A defendant's notice of removal is held to the same pleading standards as a complaint, and need not supply

supporting evidence. "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). After a defendant's jurisdictional allegations have been challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553-54. Contrary to the standard for removal and remand in diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Id.* at 554. However, "as the party seeking removal, [the defendant] bears the burden of establishing federal jurisdiction." *Lanham v. Nationstar Mortg., LLC*, 169 F. Supp. 3d 658, 660 (S.D.W. Va. 2016) (Johnston, J.).

## DISCUSSION

The Plaintiff's motion to remand challenged Northland to prove that the amount in controversy and the class size under CAFA were satisfied, as required by *Dart Cherokee*. The Plaintiff argued that the Defendants' notice of removal failed to prove the class size and the amount in controversy by focusing on the total number of accounts in West Virginia as opposed to only those West Virginia accounts Northland attempted to collect outside the statute of limitations without giving required notice to the consumers. Northland countered by submitting a declaration by the chief compliance officer stating its finding of specific West Virginia accounts that were more than three years old and had been sent a collection letter lacking the notice requirement concerning time-barred debt. Northland indicates that 1,743 accounts in West Virginia are more than three years old and received allegedly improper collection letters, and that those accounts have an aggregate balance of more than $5.7 million. Because the Plaintiff seeks cancellation of

4

debts and an injunction barring any collection attempts on time-barred debt in those accounts, the Defendants argue that the aggregate balance of those 1,743 accounts ($5,712,513.65) plus the statutory damages on each of the 1,743 accounts is sufficient to establish the appropriate class size and the amount in controversy for CAFA jurisdiction.

The Plaintiff asserts that even this calculation of West Virginia accounts that received collection letters without the appropriate notice still fails to sufficiently prove the class size exceeds 100 people because the Defendants have failed to prove the state in which each of those account payments were collected. Without setting forth where the creditors for the proposed class members reside, the Plaintiff argues, the Defendants cannot accurately provide how many class member accounts had statute of limitations of three years and therefore fall under the purview of the WVCCPA in terms of the improper collection of time-barred debt.

The Court finds that the Defendants' proof of those 1,743 West Virginia accounts that received collection letters without the requisite notice on time-barred debt in violation of West Virginia law is sufficient to satisfy the 100-member requirement under CAFA. However, the Defendants have failed to establish the amount-in-controversy. The Defendants' position assumes that debt which is outside the statute of limitations for debt collection retains its full face value for purposes of the amount in controversy. The value of injunctive relief "is measured by the value of the object of the litigation," calculated by determining "the losses that will follow" from the injunction. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *McNutt v. Gen. Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 181 (1936) for the "principle that jurisdiction is to be tested by the value of the object or right to be protected against interference."). Courts "ascertain

5

the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010).

Debt beyond the applicable statute of limitations cannot be enforced in court, and so the beneficiaries of an injunction on collection efforts of such debt gain only the non-economic benefit of being free of collection efforts. The cost of the proposed injunction to the Defendants is not the full value of the accounts, which they are not legally entitled to, but their opportunity cost in ceasing to attempt to collect out-of-statute debt. The amount depends on the net benefit they expect to receive by collection attempts—which necessarily depends on the number of consumers who voluntarily choose to pay debts they have no legal obligation to satisfy. The Defendants have only provided those West Virginia accounts outside of the three-year statute of limitations.[1] The Defendants have provided no evidence regarding the expected return on collection efforts for the expired debt.

The Defendants assert that approximately 1,743 of the alleged violations have taken place. 1,743 violations of the WVCCPA results in statutory damages of $1,743,000, as asserted by the Defendants. This amount falls well short of the $5,000,000 CAFA amount in controversy requirement. The Defendants' evidence provides no indication of any moneys collected as a result of the allegedly unlawful letters. Thus, because the Court finds that the full face value of the 1,743 West Virginia accounts more than three years old is not "in controversy," the Defendants

---

[1] The Defendants' argument in opposition to remand assumes the three-year statute of limitations asserted by the Plaintiff. However, even if a different statute of limitations were applicable, the information provided by the Defendants would not be sufficient to demonstrate that the amount in controversy is satisfied.

have failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. As a result, this Court lacks jurisdiction.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Remand* (Document 20) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Raleigh County, West Virginia. The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk for the Circuit Court of Raleigh County, West Virginia, to counsel of record and to any unrepresented party.

ENTER: May 2, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA